IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


DUDLEY EDWARDS, JR.,

      Plaintiff,

      vs.                                             No. CIV 96-0789 JC/LCS

NEW MEXICO STATE HIGHWAY AND
TRANSPORTATION DEPT., ROBERT G.
BURD and GENE LEYBA,

      Defendants.


## MEMORANDUM OPINION AND ORDER

      THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment, filed August 28, 1997 (Doc. No. 34). The Court has reviewed the motion, the memoranda submitted by the parties, and the relevant authorities. The Court finds that the motion is well taken and will be granted.

### Background

      Plaintiff Dudley Edwards is an African American who has been employed with Defendant New Mexico State Highway and Transportation Department ("the Department") for eleven years. Mr. Edwards works as an equipment operator for the Department. As an equipment operator, Plaintiff operates medium duty motorized equipment and powered stationary equipment in the construction and maintenance of the roads and highways of New Mexico.

Defendant Robert Burd is a Level III supervisor in Plaintiff's work crew. Mr. Burd has been in Plaintiff's work crew since September 1990. Defendant Gene Leyba is a Level II supervisor who was in Plaintiff's work crew from February 1993 to February 1997.

Plaintiff alleges that the Department and the individually named defendants: (1) denied him promotion and training because of his race; (2) subjected him to racial slurs and insulting conduct by his fellow employees; and (3) retaliated against him for filing an EEOC complaint. Plaintiff brings these claims under four counts in his amended complaint--Count I: Emotional Distress; Count II: Breach of Contract; Count III: Violation of Title VII and "42 U.S.C. Sec. 1981 (Race)"; and Count IV: "Punitive Damages." Plaintiff also appears to be attempting to make out a § 1983 claim in his amended complaint because Section 1983 is mentioned in the title to Plaintiff's amended complaint and is listed under the Jurisdiction section of his response brief.

A.  Defendants' alleged failure to promote and train Plaintiff

Plaintiff claims that Defendants failed to promote him from a Level II equipment operator to a Level III operator because he is African American. Advancement to equipment operator III requires the promotee to pass a demonstrated abilities test to show that he or she is qualified to use a motor grader. A motor grader is a medium duty motorized machine that is used to shape highway shoulders, channelize drainage areas, mix materials, cut slopes, build shoulders and plow snow from the roadways.

The Department's demonstrated abilities test requires the grader operator to uniformly spread a two-foot high, 100-foot long windrow of material. Each abilities test is graded by three individuals: a supervisor, an area maintenance supervisor and a district personnel officer. Plaintiff acknowledges that he failed the abilities test on several occasions; however, he contends he failed the abilities tests

because he was not given adequate training on the motor grader because of his race.  Plaintiff also believes that other non-black employees have been given the necessary training to advance to Level III.

B.  Alleged racial slurs and name calling

Plaintiff contends that several Hispanic non-supervisory co-workers have used the term "pinchi mayate" to describe him.  Plaintiff interprets "pinchi mayate" to mean fucking black bug in Spanish--a term he equates to the term "nigger."  Plaintiff also contends that his co-workers have called him "culo," "huero," "puto" and "mijo" on various occasions.  Plaintiff interprets these words to mean asshole, gringo, faggot, and boy, respectively.   Finally, Plaintiff contends that a co-worker named Jesus "Pepe" Estrada used the term "nigger" while Plaintiff was in close proximity.

Plaintiff admits that none of his supervisors, including Mr. Burd and Mr. Leyba, made racial slurs.  Plaintiff also admits that he never complained to any supervisory personnel in the Department, even though he claims that Mr. Leyba was aware co-workers used the term "pinchi mayate" to refer to him.

C.  Defendants' alleged retaliation for Plaintiff's filing of an EEOC complaint

Plaintiff contends that Mr. Leyba retaliated against him for filing an EEOC complaint by making him request to use the restroom while on a work site.  Plaintiff contends that this happened on two occasions and that other employees were not required to make such a request.

D.  Miscellaneous incidents Plaintiff alleges were racially motivated

In addition to the foregoing claims, Plaintiff alleges that Defendants improperly denied him premium pay because he is black.  Plaintiff also claims that Defendants docked his pay for

unauthorized leave on several occasions, and made him drive an unsafe vehicle--all because he is African American.

**Analysis**

I.  Standard of Review on Motion for Summary Judgment

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); Quaker State Minit-Lube, Inc., v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).  The burden of establishing the absence of a material question of fact is on the movant.  Adickes, 398 U.S. at 157.  That burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter.  Bacchus Indus., Inc. v. Arvin Indus., Inc.,  939 F.2d 887, 890-91 (10th Cir. 1991).  The non-movant may not rest on its pleadings, but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  Celotex Corp., 447 U.S. at 324.  Should a non-moving party make some showing on an issue of material fact, the court must consider the standard of proof in the case and decide whether the showing is sufficient for a reasonable trier of fact to find for the non-moving party on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A mere "scintilla of evidence in the non-moving party's favor is not sufficient to withstand the motion."  Id.  Thus, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." Id. at 251-252. The facts must, however, be construed in favor of the non-movant, and the court must consider inferences that can be drawn from those facts tending to show triable issue. Deepwater Inv. Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991); Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1377 (10th Cir. 1980). The Court will consider Defendants' motion in light of the above standards.

II.  Failure to Promote/Failure to Train

Defendants argue that the Court should grant summary judgment on Plaintiff's claims arising out of Defendants' alleged failure to promote and failure to train. Defendants argue that Plaintiff did not meet the administrative requirements for a Title VII action. Defendants, alternatively, argue that Plaintiff has not established a prima facie case of disparate treatment for his failure to promote and failure to train claims under Title VII, 42 U.S.C. § 1981 or 42 U.S.C. § 1983.

A.  Title VII:  Exhaustion Requirement

Title VII is designed to outlaw workplace discrimination and harassment that is based on race, color, religion, gender or national origin. Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin . . . ." 42 U.S.C. § 2000e-2.

Before a plaintiff may bring a Title VII suit, all administrative remedies must be exhausted. Jones v. Runyon, 91 F.3d 1398, 1399-1400 (10th Cir. 1996) (citing Sampson v. Civiletti, 632 F.2d 860, 862 (10th Cir. 1980)), cert. denied, 117 S. Ct. 1243. This exhaustion requirement is a prerequisite to the entitlement to file suit. A suit filed without meeting the administrative prerequisites must be dismissed. Knopp v. Magaw, 9 F.3d 1478, 1479 (10th Cir. 1993); Khader v.

Aspin, 1 F.3d 968, 970-71 (10th Cir. 1993).  There is, however, an exception to the exhaustion requirement whereby an employee may seek judicial relief for incidents not listed in the original charge to the EEOC, if the incidents encompass any discrimination like or reasonably related to the allegations brought before the EEOC.  Stated another way:  "acts committed pursuant to a pattern of discrimination challenged in an [EEOC] complaint, but occurring after its filing, [if] reasonably related to that complaint . . . may be challenged in district court without filing another [EEOC] complaint."  Bolden v. PRC, Inc., 43 F.3d 545, 552-553 (10th Cir. 1995), cert. denied, 116 S. Ct. 92 (1995) (quoting Brown v. Hartshorne Pub. Schl. Dist. No. 1, 864 F.2d 680, 682 (10th Cir. 1988), and Archuleta v. Colorado Dept. of Inst., 936 F.2d 483, 488 (10th Cir. 1991)).

Defendants argue that Plaintiff has not exhausted his EEOC administrative remedies for the Title VII failure to promote, failure to train, and hostile work environment claims.  Defendants' Memorandum in Support of Summary Judgment indicates that Plaintiff has filed two EEOC complaints--one on March 9, 1994, alleging a racially motivated denial of premium pay, and a second, on January 3, 1995, alleging two acts of retaliation for the previous EEOC filing.  According to Defendants, the two acts of retaliation in the January 3 complaint are the unauthorized leave incident and the unsafe truck incident.  (Defs.' Mem. Supp. Summ. J. at 15-16.)

Plaintiff counters that the allegations in his present complaint "relate back" to his EEOC complaints.  Unfortunately, the Court does not have any of Plaintiff's EEOC complaints before it.  Plaintiff's only substantive reference to his EEOC complaints is contained in his response brief, where he states "Mr. Edwards did not present the most articulate grievance but he did give notice to his employer that he felt certain actions taken by defendants discriminated against him on the basis of race."  (Pl.['s] Mem. Opp. Summ. J. at 5.)  Plaintiff does not dispute that the discriminating acts

-6-

identified by Defendants above were the only ones set forth in his EEOC complaints. Accordingly, the Court finds that Plaintiff has failed to demonstrate that he exhausted his administrative remedies as to his Title VII claims for failure to promote, failure to train, and hostile work environment.

### B.  Claims Brought Pursuant to 42 U.S.C. §§ 1981 and 1983

The Supreme Court provided an analytical framework to resolve Plaintiff's failure to promote and failure to train claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  While the McDonnell Douglas framework was developed in the context of Title VII, the courts have extended the application of this framework to claims under 42 U.S.C. § 1981 and § 1983.  See Randle v. City of Aurora, 69 F.3d 441, 450 (10th Cir. 1995); Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991) ("the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in McDonnell Douglas, whether that case is brought under §§ 1981 or 1983 or Title VII.")

The McDonnell Douglas framework is a three-stage process.  In the first stage, the plaintiff must prove, by a preponderance of the evidence, a prima facie case of discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas, 411 U.S. at 802 (1973).  Once a prima facie case is established, a presumption is created that the employer discriminated against the employee.  Burdine, 450 U.S. at 254.  The burden then shifts to the defendant in the second stage to rebut the presumption by "articulat[ing] some legitimate, nondiscriminatory reason for the employee's rejection."  McDonnell Douglas, 411 U.S. at 802.  An employer must clearly and specifically set forth its reasons through the introduction of admissible evidence.  Burdine, 450 U.S. at 255; Sorensen v. City of Aurora, 984 F.2d 349, 352 (10th Cir. 1993).  Once the employer meets its burden of production by offering a legitimate rationale for its decision,

the burden shifts back to the plaintiff in the third stage to show that the defendant's asserted reasons for the employer's rejection were a pretext for discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 804. A plaintiff's proof of pretext must consist of more than a mere refutation of the defendant's explanation; the plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Burdine</u>, 450 U.S. at 256.

With regard to Plaintiff's failure to promote and failure to train claims, Plaintiff has failed at the initial stage of the McDonnell Douglas framework--Plaintiff has failed to establish a prima facie case of discrimination. To establish a prima facie case of discrimination under <u>McDonnell Douglas</u>, a plaintiff must show that (1) he was a member of a protected class; (2) he applied for and was qualified for an available position; (3) he was rejected despite being qualified; and (4) he was treated less favorably than his counterparts outside the protected class. <u>Randle v. City of Aurora</u>, 69 F.3d 441, 451 n.13 (10th Cir. 1995); <u>Cole v. Ruidoso Mun. Schs.</u>, 43 F.3d 1373, 1380 (10th Cir. 1994).

The parties do not dispute that Plaintiff is black and therefore a member of a protected class. Thus, Plaintiff satisfies the first element under both his prima facie disparate treatment claims. <u>Randle</u>, 69 F.3d at 451 n.13. Plaintiff, however, fails to satisfy element two under his failure to promote claim because he failed the demonstrated abilities test on several occasions and was not qualified for promotion to equipment operator Level III. Consequently Plaintiff has not established a prima facie case of discrimination.

Plaintiff counters with his second disparate treatment claim--that he would have passed the demonstrated abilities test, and would have been qualified for promotion, if he had been given the requisite training on the motor grader. Plaintiff has failed to produce evidence that he was treated

less favorably than his counterparts outside the protected class, or that the motor grader training was given to persons not of the protected class.  Plaintiff offers only the bare assertions set forth in his deposition as proof that other equipment operator IIs have been given the requisite training on the grader, and subsequently promoted to Level III.  Under Federal Rule of Civil Procedure 56(e), only statements made on personal knowledge will support a motion for summary judgment--statements of mere belief must be disregarded.  See Tavery v. United States, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994); see also Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (to survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient).

Because Plaintiff has failed to demonstrate a prima facie case under McDonnell Douglas for his failure to promote and failure to train claims, Defendants' Motion for Summary Judgment is well taken and will be granted for those claims under 42 U.S.C. §§ 1981 and 1983.

III.  Hostile Work Environment

As previously discussed, Plaintiff has not exhausted his EEOC remedies with respect to his Title VII claims.  Thus, summary judgment is appropriate for Plaintiff's Title VII-based hostile work environment claim.  However, there is no similar exhaustion requirement for the hostile work environment claim brought under 42 U.S.C. §§ 1981 and 1983.  The Court will assume that § 1981 provides a cause of action for hostile work environment similar to that for § 1983.  Aramburu v. Boeing Co., 112 F.3d 1398 (10th Cir. 1997) (assuming, but not deciding, that a hostile work environment claim would be actionable under § 1981) (citing Williams v. Carrier Corp., 889 F. Supp. 1528, 1530 (M.D. Ga.1995) (holding that a hostile environment claim was actionable under § 1981 following the Civil Rights Act of 1991)); Drake, 927 F.2d at 1162 ("the elements of a plaintiff's case

are the same, based on the disparate treatment elements outlined in McDonnell Douglas, whether that case is brought under §§ 1981 or 1983 or Title VII"); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047-48, 1051 (5th Cir. 1996) (racially hostile work environment claim can violate the Equal Protection clause and be actionable under § 1983); Jemott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996) ("when § 1983 is used as a parallel remedy with Title VII in a [hostile work environment] suit . . . the elements of the substantive cause of action are the same under both statutes.")

In Bolden v. PRC Inc., 43 F.3d 550 (10th Cir. 1995), the Tenth Circuit set out the elements of a racially hostile work environment claim. Under Bolden, to survive a motion for summary judgment, Plaintiff must establish "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and (2) the harassment was racial or stemmed from racial animus. The Plaintiff must show more than a few isolated incidents of racial enmity. Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Bolden v. PRC, Inc., 43 F.3d 550, 551 (10th Cir. 1995) (internal citations and quotations omitted). Defendants maintain that Plaintiff has proffered insufficient evidence of a "pervasive" racially hostile work environment.

As outlined in the facts section above, the main thrust of Plaintiff's hostile environment claim revolves around name-calling from four of his fellow co-workers. Plaintiff has provided no evidence as to the pervasiveness or severity of these various slang Spanish terms, and no evidence as to whether the terms have racial connotations. Plaintiff appears to be complaining of isolated instances of derogatory name-calling, which alone will not satisfy the dictates of Bolden. Id. Further, Plaintiff's reference to the unauthorized leave incident, the unsafe vehicle incident, and the denial of premium pay incident do not factor into the Bolden "totality of the circumstances" because Plaintiff

has provided no evidence that any of these incidents were racially motivated. As with the failure to promote and failure to train claims, Plaintiff has not shown disparate treatment or intentional discrimination for the various alleged incidents. Thus, summary judgment will be granted as to Plaintiff's hostile work environment claim.

IV.  Retaliation

The Court must next consider whether Plaintiff has established his retaliation claim. As with the disparate treatment claims previously discussed, retaliation claims are handled under the landmark McDonnell Douglas test. To make out a retaliation claim under McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation. Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996). To do so, the plaintiff must show that: (1) he engaged in protected opposition to statutorily prohibited discrimination; (2) the employer took adverse action contemporaneously or subsequent to the employee's protected activity; and (3) a causal connection exists between the employer's adverse action and the employee's protected activity. Id.; Meredith v. Beech Aircraft Corp., 18 F.3d 890, 896 (10th Cir.1994);

If the defendant proffers such a legitimate business reason for the adverse employment decision, it successfully rebuts the presumption raised by the plaintiff's prima facie case. The plaintiff must then prove discriminatory or retaliatory intent, either through direct evidence or by proving that the reasons the defendant offered are not the true reasons for the defendant's action, but are merely a pretext for discrimination or retaliation. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 529 (10th Cir. 1994).

Determining whether Plaintiff in this case has established a prima facie retaliation case is extremely difficult because Plaintiff has failed to provide the Court with any of the specifics contained

-11-

in his EEOC complaints. Plaintiff's Response to Defendants' Summary Judgment Motion is also poorly drafted, forcing the Court to construct a timeline for the various alleged incidents and EEOC filings--filings and incidents for which there is little or no evidence.

Defendants' Motion for Summary Judgment provides some clarity to Plaintiff's previous EEOC filings. Defendants list two EEOC filings, one on March 9, 1994, and a second on January 3, 1995. According to Defendants, the March 9, 1994 complaint was based on the alleged denial of premium pay, and the January 3, 1995 complaint alleged retaliation for a March 10, 1994 filing. Defendants further state that on March 6, 1996, the EEOC issued right-to-sue letters for the two previous filings. Plaintiff has provided the Court with one of these March 6, 1996 right-to-sue letters. From this letter, and Plaintiff's deposition testimony, it appears that Plaintiff engaged in protected opposition to statutorily prohibited discrimination, satisfying the first element of his prima facie case.

Plaintiff also tenuously satisfies element two of the McDonnell Douglas test--assuming requested bathroom use is a materially adverse employment action. The Court will further assume, without deciding, that Plaintiff has satisfied element three because one of Mr. Leyba's alleged restroom requirements occurred on the same day the right-to-sue letter was issued. This close temporal proximity may provide the requisite inference to satisfy element three, even though the time frame is normally measured from the date of the EEOC filing. Candelaria v. EG & G Energy Measurements, Inc., 33 F.3d 1259, 1261-62 (10th Cir. 1994); see also Burrus v. United Tel. Co., 683 F.2d 339, 343 (10th Cir.), cert. denied, 459 U.S. 1071 (1982).

Defendants effectively counter Plaintiff's prima facie case by providing a legitimate nondiscriminatory reason for the adverse employment decision. Mr. Leyba, through his sworn affidavit, states that all members of Plaintiff's work crew have to tell their supervisor where they are

going before they leave a job site. Mr. Leyba claims this requirement exists because personnel have been left behind on remote work sites. Consequently, Plaintiff's retaliation claim ultimately fails because he has not established that Mr. Leyba's offered reason was pretext. Plaintiff has provided no evidence--besides his own bare speculation--of retaliatory intent. Plaintiff never showed that other crew members did not also have to request to use the restroom. Consequently, summary judgment will be granted as to Plaintiff's retaliation claim.

V.  State Law Claims

Plaintiff raises two separate and distinct state law claims: breach of employment contract and intentional infliction of emotional distress. Both of these state claims appear to be based on the various incidents laid out in the preceding federal claims--the alleged racial slurs, the failure to promote/train, the alleged retaliation, and the miscellaneous employment incidents previously discussed. Defendants move for summary judgment as to both claims.

A.  Contract Claim

Under New Mexico law, "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." N.M.S.A. § 37-1-23 (A). Defendants argue that Plaintiff has not satisfied the written contract requirement of § 37-1-23. Plaintiff counters with written job descriptions for an Equipment Operator Level II and a Highway Maintainer Level II. These job descriptions were published by the state personnel office as part of the New Mexico Personnel Board Classification Plan.

Although Plaintiff's contractual claim is unclear, it appears that he is trying to infer that Defendants breached an implied employment contract. Plaintiff seems to assert that the job descriptions were an implied contract which Defendants breached when they allegedly failed to train

-13-

and promote Plaintiff. Under New Mexico case law there is an exception to § 37-1-23(A) for implied employment contracts. Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 731-32 (1996).

New Mexico recognizes that implied employment contracts can be created through employee handbooks, oral representations by the employer, conduct by the parties, and/or a combination of employer representations and conduct. Id. at 10 (citing Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668 (1993)). However, not all personnel manuals or employee handbooks will create an implied employment contract. Lukoski v. Sandia Indian Management Co., 106 N.M. 664, 666 (1988). In Newberry v. Allied Stores, Inc., 108 N.M. 424, 427 (1989), the New Mexico Supreme Court stated that "a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines."

Although the two job descriptions Plaintiff provides are very detailed--giving numerous examples of possible work an equipment operator or highway maintainer might perform--they do not control the employee-employer relationship. The job descriptions are simply job descriptions, nothing more. Consequently, no implied employment contract exists, and NMSA § 37-1-23(A) immunizes Defendants. Summary judgment will be granted as to Plaintiff's breach of employment contract claim.

### B. Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress claim also faces a statutory barrier which precludes trial. Under NMSA § 41-4-4, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity for any tort except as waived by Sections 41-4-5 through 41-4-12 NMSA 1978." NMSA § 41-4-4(A). Under NMSA § 41-4-3(F), a public employee

means any officer, employee or servant of a governmental entity, including "persons acting on behalf or in service of a governmental entity in any official capacity. . . ." NMSA § 41-4-3(F)(3). Review of the enumerated sections reveals that intentional infliction of emotional distress is not one of the waived immunities. See e.g. Silva v. Town of Springer, 121 N.M. 428 (Ct. App.), cert. denied, 121 N.M. 375 (1996). Thus, because the New Mexico State Highway and Transportation Department is a governmental entity--and Mr. Leyba and Mr. Burd are public employees--the defendants are immune from the emotional distress claim. See Ferguson v. New Mexico State Hwy. Comm'n, 98 N.M. 718 (Ct. App. 1981), rev'd on other grounds, 98 N.M. 680 (1982).

As previously discussed, Plaintiff's Response to Defendants' Summary Judgment Motion is not a model of clarity. It appears that Plaintiff is attempting to argue that Mr. Leyba and Mr. Burd have waived their immunity by acting outside the scope of their employment. This argument is without merit because Plaintiff has failed to produce any evidence that either Mr. Leyba or Mr. Burd acted outside the scope of their employment. Plaintiff has not shown discrimination under his failure to promote or failure to train claims, he has failed to demonstrate a racially hostile work environment, and he has failed to establish his retaliation claim. Plaintiff even admits that neither Mr. Leyba nor Mr. Burd ever used racial slurs, and that he never complained to his supervisors about the alleged racial slurs of his co-workers. Accordingly, the Court finds that Mr. Leyba and Mr Burd were working within the scope of their employment, and summary judgment will be granted as to Plaintiff's intentional infliction of emotional distress claim.

Wherefore,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is **granted on all claims**.

DATED this 3rd day of October, 1997.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Ramon Acosta<br>Las Cruces, New Mexico |
| Counsel for Defendants: | Leonard J. Piazza<br>Law Office of T. A. Sandenaw<br>Las Cruces, New Mexico |